Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4539 | **DATE** | 9/30/2002 |
| **CASE TITLE** | | Hennon vs. Principi | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant's motion for summary judgment on plaintiff's claims for sex discrimination and retaliation [13-1] is granted. The Court further construes plaintiff's brief in response to his claim for failure to accommodate under the Rehabilitation Act as a motion for voluntary dismissal under Rule 41(a)(2), Fed.R.Civ.P., and dismisses the claim. Judgment entered in favor of defendant as to the sex discrimination and retaliation claims, and case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 30 2002 date docketed | 25 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. Mailed by MD. | | | |
| | Copy to judge/magistrate judge. | | 9/30/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAMUEL L. HENNON,               )
                                )
        Plaintiff,               )
                                )
   vs.                           )   No. 00 C 4539
                                )   Judge Joan H. Lefkow
ANTHONY J. PRINCIPI, Secretary of the  )
Department of Veterans Affairs,  )
                                )
        Defendant.               )

DOCKETED
SEP 3 0 2002

## MEMORANDUM OPINION AND ORDER

Before the court is the motion by defendant, Anthony J. Principi, Secretary of the Department of Veterans Affairs, for summary judgment on plaintiff's, Samuel L. Hennon ("Hennon"), claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* Plaintiff alleges that defendant discriminated against him on the basis of his sex, male, and retaliated against him for complaining about the discrimination. Plaintiff initially claimed that defendant failed to accommodate his disability under the Rehabilitation Act, but he represents in his brief that he seeks to voluntarily dismiss this claim. (Resp. at 15.) Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(5). For the reasons stated below, the court dismisses the Rehabilitation Act claim as requested and grants defendant's motion for summary judgment.

1

25

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court applies the summary judgment standards with added rigor in employment discrimination cases where intent and credibility are crucial issues. *Courtney v. Biosound*, 42 F.3d 414, 419 (7th Cir. 1994).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF[1]

At all relevant times, plaintiff was a registered nurse employed by the Department of Veterans Affairs in the Emergency Department at Edwards H. Hines Hospital ("Hines VA Hospital"). The Emergency Department is divided into two areas: the urgent/emergent area, which operates 24 hours a day, and the non-emergent area, which operates as a clinic on weekdays between the hours of 7:30 a.m. and 5:30 p.m. Nurses in the Emergency Department must be able to work in all of the department's areas. In general, nurses in the Emergency Department work one of three shifts: (1) the a.m. shift, which begins at 7:30 a.m. and ends at 4:00 p.m.; (2) the p.m. shift, which begins at 3:30 p.m. and ends at midnight; or (3) the midnight shift, which begins at midnight and ends at 8:00 a.m. Nurses in the Emergency Department work a rotating shift, which means that their days off change from week to week and do not always fall on Saturday or Sunday. The applicable collective bargaining agreement gives management the right to schedule nurses' hours in whatever manner management believes best meets patients' needs.

Typically during the work week, there are one to two nurses assigned to the urgent/emergent area, one or two nurses assigned to the clinic, and usually one nurse assigned to triage patients for both areas. In the evening and on weekends, there are two or three nurses

---

[1] Unless otherwise indicated, paragraph references to defendant's Local Rule 56.1 statement of material facts are identified as "Def. L.R. 56.1" and plaintiff's Local Rule 56.1 statement of additional facts are identified as "Pl. L.R. 56.1."

In some instances, there are disputes regarding the parties' statements of facts. Where plaintiff offers his affidavit, which was made subsequent to his deposition, the court strikes those portions of the affidavit that contradict the deposition testimony. *Darnell* v. *Target Stores*, 16 F.3d 174, 177 (7th Cir. 1994). Otherwise, where plaintiff supports his disputes with citations to the record, including those additional statements which are inappropriately included in plaintiff's response to defendant's statement of facts, see *Malec* v. *Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000), the court adopts those statement in the interests of justice and in expediting the litigation.

assigned to the urgent/emergent area, and no nurses assigned to the clinic or triage. The busiest time in the department during the week is from 10:00 a.m. until 5:30 p.m.

Plaintiff's immediate supervisor in April 1999 was Gail Speer ("Speer"). Prior to April 1999, plaintiff worked a straight p.m. schedule, beginning work at 4:00 p.m. and ending at midnight. In April 1999, plaintiff began working an alternative shift, which was from 9:00 a.m. to 5:30 p.m. on weekdays and 11:00 a.m. to 8:30 p.m. on weekends. Speer advised plaintiff that he would have to work from 11:00 a.m. to 8:30 p.m. on some Mondays and Fridays in order to cover busy periods. Plaintiff was happy with the alternative shift because it allowed him to spend more time with his school-age children.

In June 1999, Pamela Barlow ("Barlow") became plaintiff's immediate supervisor. Barlow changed plaintiff's hours so that he was required to work from 11:00 a.m. to 8:30 p.m. on both weekdays and weekends. Plaintiff's new shift assignment also caused him to receive the heaviest workload, or almost three times as many patients. Plaintiff observed that female nurses were assigned to his previous 9:00 a.m. to 5:30 p.m. shift. The only time a male nurse worked the 9:00 a.m. to 5:30 p.m. shift was when another male nurse filled in for one of the female nurses.

Plaintiff complained about the shift change and asked if Barlow could at least allow him some 9:00 a.m. to 5:30 p.m. shift time.[2] Barlow responded to plaintiff by saying, "Well I need

---

[2] In disputing defendant's statement of facts, plaintiff offers his affidavit, in which he states "I went to Barlow and complained about the shift change." (Pl. Ex. 1 ¶ 3.) Plaintiff, however, offers in his additional facts that he "complained about the disparity in shift assignment and workload to Ms. Barlow" (Pl. L.R. 56.1 ¶ 42) and supports this statement with an interrogatory answer in which he states that he asked Barlow about the shift assignment and patient workload and then subsequently states, "I began to collect information that I would need to file a grievance concerning this disparity in shift assignment and workload. I had approached Ms. Barlow already[.]" (Pl. Ex. 2 Ans. 3 at 4-5.)

4

this. I am the supervisor, I determine how you are scheduled. I cannot give you the 9:00 a.m. to 5:30 p.m. shift. [I] need you from 11:00 [a.m.] to 8:30 p.m." She also said to plaintiff, "You're a man, you'll just have to tough this out." (Pl. L.R. 56.1 ¶ 42.)[3] Although Barlow said that she would look into changing plaintiff's shift assignment, she never got back to him.[4]

Plaintiff went to his union representative, a fellow nurse, to complain that only female nurses were being allowed to work the 9:00 a.m. to 5:30 p.m. shift assignment. The union representative told plaintiff that, in fact, the female nurses had complained to Barlow that

---

In reviewing plaintiff's deposition, the court relies on plaintiff's response to defendant's statement of facts over his statement of additional facts. In plaintiff's deposition, plaintiff states:

Q: And then, after Pamela Barlow came six weeks to two months later what happened?
A: My schedule on the certified time at Hines began to change.
Q: How so?
A: I began being scheduled the split shift, 11:30 to 8:00, during the week, and other nurses were given my 9:30 to – 9:00 to 5:30 shift to work.
Q: And did you complain to Barlow about this?
A: Well, I asked her what was going on.
She says, well, that she felt that because I had been a p.m. nurse that it was better suited that I work the split shift. I said, "Well, that's not the way this was set up." And she said, "Well, that's the way I want it." And I said, "then I want to –" well, you can't.
Q: What did you say? I'm sorry.
A: She said, "That's the way I want it." And then I said, "Well, then I want to not work it then." And she says, "Oh, no, you can't. You agreed to it. You have to work." I said, "Well, I agreed to something else. I didn't agree to this."
And so then we left it at that, and she said, "I'll try and work it out, you know."
Q: Approximately when did you go to her and have this conversation?
A: Maybe within two weeks after the scheduling had started to change.

(Hennon Dep. at 19-20.)

[3]Furthermore, while the court recognizes that plaintiff makes no mention that Barlow also said to him, "You're a man, you'll just have to tough this out[,]" during this line of questioning in plaintiff's deposition (Hennon Dep. at 19-20), plaintiff did mention it in his earlier answers to defendant's interrogatories. (Pl. Ex. 2 Ans. 3.) Therefore, the court will recognize it in the interests of adjudicating defendant's motion for summary judgment.

[4]The shift assignment caused further inconveniences for plaintiff. As a staff nurse, plaintiff was required by August 1999, to attend mandatory in-service training seminars offered by the Department of Veterans Affairs (Def. L.R. 56.1 ¶ 12). Many p.m. nurses, including plaintiff, had difficulty attending the seminars because the hospital operates with fewer employees in the evenings, making it more difficult to find relief help. (*Id.*) Thus, several nurses, including plaintiff, had to scramble during the last few months to ensure that they were not deficient in training. (*Id.*)

plaintiff was the one receiving the favorable treatment. (Def. L.R. 56.1 ¶ 9; Pl. L.R. 56.1 ¶¶ 33-36.) The union representative further responded that as far as a grievance was concerned, plaintiff did not have a (meritorious) grievance, but that she (the union representative) and several of her coworkers could file a grievance concerning the alternative shift assignments that plaintiff had been working. (Pl. L.R. 56.1 ¶ 43.)[5]

On October 20, 1999, plaintiff received an influenza or flu shot at work, as one of his prerequisites for working with patients. As a result of the flu shot, plaintiff's doctors diagnosed plaintiff as contracting "Guillian-Barre Syndrome," which causes ascending paralysis and is a very rare reaction to flu shots. (Def. Reply Ex. A) The Guillian-Barre Syndrome (and a subsequent stroke that plaintiff suffered in January 2001) caused plaintiff to lose fine dexterity in his right hand, to feel numbness and tingling in his fingertips, to tremble when he held something in his right hand, and to drop things.

As a result of the Guillian-Barre Syndrome, plaintiff went on a medical leave of absence on October 20, 1999. During this time at home, plaintiff was suffering a maturing of his paralysis. Plaintiff could not walk at all and had lost all control of his bowel and bladder habits.

When plaintiff first began his medical absence, Barlow telephoned him weekly to inquire about his health, what he was doing at home, and when he planned to return to work. During one such telephone call in December 1999, when plaintiff was discussing his medical condition, Barlow said to plaintiff, "Well, you are a man. You can tough this out." (Def. L.R. 56.1 ¶ 24.)

---

[5]Defendant disputes plaintiff's conversation with the union representative as inadmissible hearsay. The court finds this conversation as probative of plaintiff's state of mind that he was or should have been aware of possible discrimination.

6

In general, plaintiff found Barlow's questions probing and her telephone demeanor offensive. However, the phone calls from Barlow ended after January 5, 2000.

As plaintiff's supervisor, Barlow had the responsibility to complete a portion of a report of accident and illness, submit the report to defendant's workers' compensation specialist, and furnish plaintiff with a copy of that report. According to plaintiff, Barlow signed a report on November 12, 1999 which represented that his claim for workers' compensation had been filed and that his claim would be expedited by the Department of Labor. (Pl. L.R. 56.1 ¶ 47.)

On or about November 21, 1999, Barlow notified plaintiff that she needed plaintiff to complete another form, the U.S. Department of Labor form entitled, "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation" ("CA-1 form"). Plaintiff then realized that his claim for workers' compensation had not been filed as he had been led to believe. On November 21, 1999, plaintiff completed the top portion of the CA-1 form. Plaintiff noted on the form that he had a "severe and progressive reaction to the flu shot vaccine given by his employer" that was "diagnosed as Guillian-Barre Syndrome on 11/17/99." (Def. L.R. 56.1 ¶ 16.)

Barlow then completed her portion of the CA-1 form. (*Id.* ¶ 17.) On the CA-1 form, Barlow was required to fill out whether plaintiff was injured in the performance of duty. Barlow spoke with the nurse who administered the shot, who told Barlow that plaintiff had complained of leg pain and weakness before receiving the shot. Barlow also spoke with the Chief of Infection Control, Constance Pachucki, M.D., who never examined plaintiff, was not aware of plaintiff's claim for workers' compensation and not normally involved in employees' claims for workers' compensation, but told Barlow that the flu shot is not normally a risk factor for

7

Guillian-Barre Syndrome.[6] Barlow then answered "No" to the question of whether plaintiff was injured in the performance of duty, noting that (1) according to Dr. Pachucki, a flu shot is not a risk factor for Guillian-Barre Syndrome and (2) according to three witnesses, plaintiff had complained of leg pain and weakness before he was given the flu shot. Plaintiff's CA-1 form was filed with the Department of Labor on or about December 3, 1999, six weeks after the onset of his illness.

In response to the delay in the filing of his claim for workers' compensation, plaintiff turned to his Congressman for assistance. Shortly after this phone call, plaintiff received a phone call from the Director of the U.S. Department of Labor for the Chicago Office who informed plaintiff that the Department of Veterans Affairs was disputing his claim for on-the-job injury and disability. Plaintiff investigated this allegation with the Department of Veterans Affairs. Various individuals told plaintiff that, contrary to what the Department of Labor had stated, that it was not the Department of Veterans Affairs that was holding up his compensation but that it was the Department of Labor.

On January 5, 2000, when Barlow placed her last phone call to plaintiff, plaintiff discussed defendant's opposition to his claim for workers' compensation. While speaking with Barlow, plaintiff came to a realization that Barlow was responsible for defendant's position.

---

[6] Plaintiff asserts that Dr. Pachucki acknowledged that the consent form indicated Guillian-Barre Syndrome was a risk factor of the flu shot and refers to page 11 of Dr. Pachucki's deposition testimony. (Pl. L.R. 56.1 ¶ 51.) According to that citation of the record, Dr. Pachucki is apparently reading the consent form for the flu shot, stating:

> It [the consent form] says: "An uncommon illness characterized by ascending paralysis (Guillian Barre Syndrome) has been reported following other vaccines, but not in association with this flu vaccine; however, it must be assumed that the risk is present."

(Dr. Pachucki Dep. at 11.) Based on this deposition testimony, the court fails to see how Dr. Pachucki's reading of the consent form constitutes an admission by Dr. Pachucki that Guillian-Barre Syndrome is a risk factor for the flu shot that plaintiff received.

8

Plaintiff saw a pattern of harassment by Barlow and confronted her, saying, "It was you all along," and "[y]ou are the one who filed the objection to [my] workers' compensation claim." (Pl. L.R. 56.1 ¶ 51.)

On January 10, 2000, plaintiff contacted the EEO counselor in the Office of Resolution Management and complained that his supervisor discriminated against him when she used his leave time to pay him in December 1999, when she telephoned him at home, and when she changed his schedule in June 1999. In April 2000, the Department of Labor approved plaintiff's request for workers' compensation, retroactive to December 4, 1999, which was the date his continuation of pay expired. On May 12, 2000, the Office of Resolution Management issued a final agency decision dismissing plaintiff's complaint of discrimination for various reasons and noting specifically that plaintiff's claim regarding a schedule change in June 1999 was untimely.

## DISCUSSION

Plaintiff claims that Barlow treated him differently from the female nurses (a) when he sought an accommodation of his shift assignment and (b) when he filed his claim for workers' compensation. (Compl. ¶¶ 8, 11-12.) Plaintiff also claims that defendant retaliated against him for opposing and filing a complaint of and discrimination. (*Id.* ¶ 16.) Defendant denies these claims and further contends that claim (a) is barred because plaintiff, as a federal employee, failed to contact an EEO counselor within a timely manner, as required by federal regulations, at 29 C.F.R. § 1614.105.

### A. Timeliness of discrimination claim based on shift assignment

A federal employee asserting a discrimination charge must contact an EEO counselor within 45 days of "the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). Unless the employee falls within one of the exceptions listed under § 1614.105(a)(2),[7] the employee is time-barred from bringing his claim. *Johnson v. Runyon*, 47 F.3d 911, 917 (7th Cir. 1995).

Plaintiff does not argue that he met any of the exceptions listed under § 1614.105(a)(2). Instead, by responding that his differential treatment can be used as background evidence of discrimination, citing *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977), plaintiff implicitly concedes that he is time-barred from bringing suit based on his shift assignment. To the extent plaintiff does not so concede, he is clearly time-barred.[8]

### B. Discrimination claim regarding plaintiff's claim for workers' compensation

Although plaintiff does not clearly articulate his theory of liability, it would seem that he believes that Barlow, with discriminatory intent, opposed and delayed the approval of his

---

[7]According to 29 C.F.R. § 1614.105(a)(2):

The agency or the Commission shall extend the 45-day limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was presented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission

[8]Imbedded within his statement of facts, plaintiff makes an argument that he was delayed in filing his EEO complaint "because of the severity of the affliction he suffered from the flu shot given to him by his employer which included paralysis and other medical issues from [Guillian-Barre] [S]yndrome also known as French polio." (Pl. L.R. 56.1 ¶ 45.) Defendant points out that plaintiff complained about his shift assignment in July or August 1999 but received his flu shot ("the affliction that he suffered") two to three months later in October 1999. Thus, more than 45 days passed from the alleged adverse employment action of changing his shift assignment before he became ill. As a result, no "circumstances beyond his control" exception would apply.

workers' compensation claim. He relies on evidence that Barlow filled out a form stating that plaintiff had not been injured in the performance of his duties when, in fact, as was ultimately determined, he had been. He bolsters this evidence with Barlow's "harassing" conduct, the change in shift assignment and the "You're a man" comment in June, 1999, the "You're a man" comment in December, 1999, the unsupportive phone calls while he was off duty after falling ill, and his answer to Interrogatory No. 3, in which he asserts that plaintiff's female coworkers suffering from job related illness or injury were not treated as he was treated.[9] Defendant contends that plaintiff cannot make a *prima facie* showing of discrimination.

Under Title VII, an employer cannot "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). To prevail on a claim of discrimination, a plaintiff must show that the defendant intentionally discriminated against him. *Kormoczy v. Sec'y of Hous. and Urban Dev.*, 54 F.3d 1394, 1397 (7th Cir. 1997). To make out his proof, plaintiff may offer evidence through either direct or indirect methods of proof. *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001). "Under the direct proof method, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or its agents, or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Huff v. UARCO, Inc.*, 122 F.3d 374, 379 (7th Cir. 1997), citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 242 (1989) (considering this

---

[9] Defendant correctly notes that plaintiff does not argue in his brief that Barlow discriminated against him when she used his accumulated leave time to pay him in December 1999 while he was awaiting his claim for workers' compensation.

method as the "mixed motive" approach). The indirect method of proof is the familiar burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973).

*1. Direct method of proof*

Plaintiff fails to make a showing under the direct method of proof. There is no evidence that Barlow acknowledged a discriminatory intent, so plaintiff must rely on circumstantial evidence: the "You're a man" comments and Barlow's hostility towards him, and her resistance to his claim for workers' compensation. Neither of the two "You're a man" comments can be temporally associated with the alleged adverse employment action, however, so as to constitute direct proof of discriminatory intent. *Cf. Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996) ("To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process.").[10] One was made months before in regard to the shift assignment dispute and the other made well after the application for workers' compensation had been filed. A jury would be engaged in mere speculation to rest a conclusion of discrimination based solely on these "stray remarks." *Price Waterhouse*, 490 U.S. at 277 ("[S]tray remarks in the workplace . . . cannot justify requiring the employer to prove that its . . . . decisions were based on legitimate criteria.") (O'Connor, J., concurring). For similar reasons, the evidence of Barlow's hostility does not create a triable issue of fact. The evidence surrounding Barlow's handling of plaintiff's workers' compensation claim bespeaks regularity. Although defendant did not endorse the claim, it is uncontroverted that Barlow consulted various resources before taking that position and she relied on those resources

---

[10]Further, the evidence is wholly unlike the situation presented in *Price Waterhouse*, 490 U.S. at 256, in which plaintiff put forward proof of statements "motivated by stereotypical notions about women's proper deportment" by the decision makers related to their decision to place her candidacy for partnership on hold.

12

in stating the basis for the decision on the form. Again, a jury would be engaged in mere speculation to infer from the circumstances that Barlow had a discriminatory motive.

Plaintiff, alternatively, argues that the comments, at least, demonstrate mixed motives, invoking the principle of *Price Waterhouse*, 490 U.S. at 250-52, that once a plaintiff has shown that an employment decision was motivated in part by discriminatory factors, the defendant may avoid liability by proving that it would have made the same decision anyhow. The mixed motives doctrine is an escape valve for a defendant, not a burden lifter for a plaintiff. As in any other case, under *Price Waterhouse*, plaintiff must demonstrate a discriminatory motive. If it appears that the employer had a non-discriminatory motive also, then the employer may show that the non-discriminatory motive alone would have led to the same result. It is inapposite here, because, as already indicated, plaintiff has not met his burden to show a discriminatory motive. *Cf. Abioye v. Sunstrand Corp.*, 164 F.3d 364, 369 (7th Cir. 1998) ("'At the outset, . . . we do not believe that the evidence of record will support a determination that there is sufficient evidence, direct or circumstantial, of a mixed motive in this case").

2. *Indirect method of proof*

Under the indirect method of proof, plaintiff must meet all of the elements of his *prima facie* case of disparate treatment. As set forth in *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 376 (7th Cir. 1998),

> Disparate treatment "occurs when a plaintiff is intentionally treated less favorably than others simply because of his race, color, religion, sex or national origin." *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir.1996). Under the burden-shifting formula of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII plaintiff must first establish a prima facie case of race or sex discrimination by proving that she: (1) was a member of a protected class; (2) was qualified for the job in question or was

13

> meeting her employer's legitimate performance expectations; (3) suffered an adverse employment action; and (4) the employer treated similarly situated persons not in the protected class more favorably. *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir.1995).

Defendant contends that plaintiff cannot meet the fourth element of his *prima facie* showing in that he has no evidence that female workers similarly situated were treated more favorably than he. This is clearly correct. Plaintiff admits that he knows of no other claim for workers' compensation that arose from a disability as unusual as Guillian-Barre Syndrome such as might have required a more-than-routine investigation and he has no knowledge of whether Barlow delayed any one else's claim for compensation. (Pl. Resp. to Def. L.R. 56.1 ¶¶ 19-20). Indeed, plaintiff has no evidence that a single female employee's application based on any type of illness was more expeditiously handled. He merely asserts that female employees suffering from job-related illness or injury were treated more favorably, citing only to his own assertion of the fact in his answers to interrogatories. (*Id.* ¶ 32.)[11] This is not evidence. It is merely a self-serving statement which will not defeat summary judgment. *Accord Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993), quoting *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991).("[S]elf-serving affidavits without factual support in the record will not

---

[11]The court has reviewed plaintiff's answers to defendant's interrogatories and plaintiff's deposition testimony. In plaintiff's answers to interrogatories, plaintiff makes statements lacking in foundation, such as "None of my female coworkers had their annual leave or sick leave assailed in this manner and, in fact, some were allowed to use leave without pay without any difficulty at all," and "I defy the VA to produce documentation that they treated female nurses in the same manner." (Pl. Ex. 2.)

Plaintiff makes other statements lacking in foundation in his deposition. For example, plaintiff states that he knew of two nurses in his department who received workers' compensation. (Hennon Dep. at 53-55.) Plaintiff also states that at Barlow's deposition (at which plaintiff was present but which plaintiff did not submit to the court), Barlow stated that she objected to only one out of nine or ten claims for workers' compensation other than plaintiff's but that for the one, she did not consult a VA physician. (*Id.* at 57). Plaintiff's recapitulation of a witness's testimony is hearsay and cannot be considered as admissible evidence.

defeat a motion for summary judgment. . . . '[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion'").

For these reasons, summary judgment must be granted in favor of defendant on this claim.

### 3. Retaliation claim

Plaintiff next claims that defendant retaliated against him for complaining of discrimination. To establish a *prima facie* case of retaliation, plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Parkins* v. *Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1038-39 (7th Cir. 1998), citing *Debs* v. *Northeastern Ill. Univ.*, 153 F.3d 390, 397 (7th Cir. 1998). If he establishes these elements, defendant has the burden to proffer a legitimate, non-discriminatory reason for its actions. Once this reason is produced, plaintiff must prove that the reason is pretextual. *Parkins*, 163 F.3d at 1039.

Plaintiff cannot establish a *prima facie* case of retaliation. There is no evidence that plaintiff engaged in protected activity (*i.e.*, that he opposed sex discrimination) at the time he complained about the shift assignment or at any time before Barlow sent off his claim for compensation on December 3, 1999.[12] This leaves plaintiff only with his EEO complaint that he filed on January 10, 2000. But the alleged retaliatory conduct, Barlow's statement on plaintiff's CA-1 form that he did not contract Guillian-Barre Syndrome during his work performance and

---

[12]Plaintiff does not contend that the alleged retaliation is causally linked to his exercise of rights under a collective bargaining agreement, nor could he appropriately contend that pursuit of a grievance based on the collective bargaining agreement was a statutorily protected activity under Title VII.

15

defendant's decision to oppose plaintiff's claim for workers' compensation, occurred more than a month *before* January 10, 2000. It must follow, therefore, that plaintiff cannot establish that any protected activity is linked to any allegedly retaliatory conduct.

Therefore, summary judgment must be granted on the retaliation claim.

## CONCLUSION

For the reasons set forth above, the court grants defendant's motion for summary judgment on plaintiff's claims for sex discrimination and retaliation [#13-1]. The court further construes plaintiff's brief in response to his claim for failure to accommodate under the Rehabilitation Act as a motion for voluntary dismissal under Rule 41(a)(2), Fed. R. Civ. P., and dismisses that claim. The clerk is directed to enter judgment in favor of defendant as to the sex discrimination and retaliation claims, and to terminate the case.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 30, 2002.